UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| **VICTORY GLOBAL, LLC** *doing business as* Brough Brothers Distillery,<br><br>    **Plaintiff,**<br><br>V.<br><br>**FRESH BOURBON, LLC,**<br><br>    **Defendant.** | CIVIL ACTION NO. 5:21-62-KKC<br><br><br><br>**OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on the motion for summary judgment (DE 70) filed by defendant Fresh Bourbon, LLC and the motion for partial summary judgment (DE 73) filed by plaintiff Victory Global, LLC d/b/a Brough Brothers Distillery ("Brough Brothers"). For the following reasons, the Court will grant Fresh Bourbon's motion for summary judgment and deny Brough Brothers' motion for partial summary judgment.

**I.    Facts**

Plaintiff Victory Global, LLC and defendant Fresh Bourbon, LLC are both owned by African Americans, and both sell bourbon. Victory Global is owned and operated by three brothers with the last name Yarbrough and operates under the name Brough Brothers Distillery. The Court will refer to plaintiff Victory Global as Brough Brothers in this opinion. Defendant Fresh Bourbon, LLC is owned by Sean and Tia Edwards.

Brough Brothers claims it was the first "African American owned bourbon distillery in the Commonwealth of Kentucky . . . . ." (DE 1 Complaint, ¶3.) In the complaint, Brough Brothers asserts that defendant Fresh Bourbon falsely advertises that Fresh Bourbon is the "first black-

owned bourbon distillery in Kentucky," and that it makes other related false claims. (DE 1, Complaint, ¶1.)

Brough Brothers argues that it owned a distillery in Kentucky before Fresh Bourbon did. It submits evidence that it obtained the state and federal licenses required to operate a distillery by September 30, 2020. (DE 83 Reply at 2-3.) By December 31, 2020, it had distilled bourbon and filled its first bourbon barrel in a facility in Louisville, Kentucky that it leases. (DE 83 Reply at 3; DE 20-1 Mem. 2, 4.)

Fresh Bourbon, on the other hand, did not lease a facility until early 2022 and did not obtain the required federal and state licenses to operate a distillery until September 2022. (DE 70-1 Mem. at 2; DE 70-2, S. Edwards Dep. 55-56.) It began distilling its product at this facility in late 2022. (DE 70-2 S. Edwards Dep. 42.)

Fresh Bourbon submits evidence, however, that in 2018, years before Brough Brothers began distilling bourbon in Kentucky, Fresh Bourbon representatives were "distilling" bourbon that it sold under the name "Fresh Bourbon." In Early 2018, Fresh Bourbon began producing bourbon at Hartfield & Company Distillery in Paris, Kentucky. (DE 70-1 Mem. 1; DE 70-2 S. Andrews Dep. 50, 73.) Prior to this, Fresh Bourbon developed a mash bill, or recipe, for its product. (DE 70-2 S. Edwards Dep. 51-53.) Fresh Bourbon points to Sean Edwards' deposition in which he states that Hartfield allowed him and other Fresh Bourbon representatives to distill bourbon in the Hartfield space. (DE 70-2, S. Edwards Dep. 47.) This was before Fresh Bourbon had the licenses or equipment required to distill bourbon. (DE 70-2, S. Edwards Dep. 49-50.) Fresh Bourbon distilled bourbon this way until it could build its own distillery. (DE 70-2, S. Edwards Dep. 55.) Edwards testified that, at that time, Fresh Bourbon did not own or operate its own distillery. (DE 70-2, S. Edwards Dep. 55.)

In order to operate a bourbon distillery in Kentucky, Brough Brothers asserts, an entity must be licensed by the federal Alcohol and Tobacco Tax and Trade Bureau (TTB) and the Kentucky Department of Alcoholic Beverage Control (KABC). (DE 1, Complaint, ¶¶ 14-19.) *See* 27 C.F.R. § 1.21(a); Ky. Rev. Stat. § 241.080. Fresh Bourbon does not dispute this.

Brough Brothers asserts that, since Fresh Bourbon could not legally operate a bourbon "distillery" in Kentucky during the time its representatives distilled bourbon at Hartfield, and because Fresh Bourbon did not own or lease any distillery at the time, Fresh Bourbon was not a "black-owned distillery" during this time period. Under this argument, Fresh Bourbon did not become a black-owned distillery until 2022 – when it had the licenses required to operate a distillery and leased its own facility.

Thus, Brough Brothers asserts, *Brough Brothers* was the first black-owned bourbon distillery in Kentucky, not Fresh Bourbon. (DE 1, Complaint, ¶ 3.)

Brough Brothers asserts a claim against Fresh Bourbon for false advertisement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). It also asserts common law claims for unfair competition and for tortious interference with contractual or business relationships or expectancies and a claim under a Kentucky statute that prohibits the use of false brands to deceive consumers. Ky. Rev. Stat. § 365.100.

Fresh Bourbon moves for summary judgment in its favor on all Brough Brothers' claims against it. Brough Brothers moves for summary judgment in its favor as to only Fresh Bourbon's liability under the Lanham Act for false advertising. Brough Brothers presents no evidence of damages but asks the Court to conduct a trial on that issue.

**II. Analysis**

    **A.**    **False advertisement under the Lanham Act**

3

To survive Fresh Bourbon's motion for summary judgment on the claim for false advertisement under the Lanham Act, Brough Brothers must point to evidence of the following: 1) Fresh Bourbon made false or misleading statements of fact concerning the bourbon it sells; 2) the false statement actually deceived or tends to deceive a substantial portion of the intended audience; 3) the false statement "is material in that it will likely influence the deceived consumer's purchasing decisions"; 4) the advertisements were introduced into interstate commerce; and 5) there is some causal link between the false statements and harm to the plaintiff. *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 613 (6th Cir. 1999).

As to the first element – the misleading statement – the statement can be either "literally false" or true or "too ambiguous to support a finding of literal falsity," but "misleading or confusing." *Id*. at 614.

In determining precisely what statements Brough Brothers points to for its Lanham Act claim, the Court will look to its response to Fresh Bourbon's motion for summary judgment and to Brough Brothers' motion for partial summary judgment. Brough Brothers alleges that Fresh Bourbon made the following specific false statements:

1) Fresh Bourbon was the "first black-owned distillery in Kentucky" (DE 80 Response 5);

2) Fresh Bourbon is the "[f]irst black-owned bourbon distillery coming to downtown Lexington" (DE 80 Response 7; DE 73 Mem. 9; DE 73-12 Fresh Bourbon Website at CM-ECF p. 5);

3) "There had been no African Americans producing bourbon that weren't slaves" until Fresh Bourbon did it (DE 80 Response 7; DE 73 Mem. 9; DE 73-11 Lex 18 Article);

4

4) Fresh Bourbon is "the first bourbon developed grain to glass by African Americans in the state of Kentucky" (DE 80 Response 7; DE 73 Mem. 9; DE 73-13 X Account); and

5) Fresh Bourbon employed Kentucky's "first African American Master Distiller in Kentucky since slavery" (DE 80 Response at 15.)

The proof necessary on the second element – deception – depends upon what kind of misleading statements the plaintiff alleges. For "literally false" statements, the plaintiff need not present evidence that the statements actually misled consumers. "Actual deception is presumed." *Am. Council of Certified Podiatric Physicians &* Surgeons, 185 F.3d at 614. For statements that are true or ambiguous but deceptive, in contrast, the plaintiff must present proof of "actual deception (*i.e.*, evidence that individual consumers perceived the advertisement in a way that misled them about the plaintiff's product)." *Id*.

This is because, plaintiffs "alleging an implied falsehood are claiming that a statement, whatever its literal truth, has left an impression" on consumers "that conflicts with reality," which requires "a comparison of the impression, rather than the statement, with the truth." *Time Warner Cable, Inc. v. DIRECTV, Inc*., 497 F.3d 144, 153 (2d Cir. 2007) (quoting *Schering Corp. v. Pfizer Inc*., 189 F.3d 218, 229 (2d Cir. 1999)). Extrinsic evidence is necessary to show the impression left on consumers. *Time Warner Cable, Inc.*, 497 F.3d at 153.

Because a literally false statement "conflicts with reality," *id*., to determine whether a statement is "literally false," the Court compares the statement "with the reality it purports to describe." *Id*. The Sixth Circuit holds that a "literally false" statement is "bald-faced, egregious, undeniable over the top." *FedEx Ground Package System, Incorporated v. Route Consultants, Inc.*, 97 F.4th 444, 453 (6th Cir. 2024) (quoting *Schering*, 586 F.3d at 513).

5

"[T]he Court reads the advertisement and asks whether it unambiguously conveys a false message. If the answer is yes, then the Court declares the advertisement to be literally false." *Millennium Lab'ys, Inc. v. Ameritox, Ltd.*, 924 F. Supp. 2d 594, 600, n.10 (D. Md. 2013). "[O]nly an unambiguous message can be literally false." *Louisiana-Pac. Corp. v. James Hardie Bldg. Prods., Inc.*, 928 F.3d 514, 520 (6th Cir. 2019) (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 587 (3d Cir. 2002)). The statement must be "unambiguously deceptive." *Wysong Corp. v. APN, Inc. (17-1975)*, 889 F.3d 267, 271 (6th Cir. 2018). "A statement is not literally false if it reasonably conveys different messages." *FedEx Ground Package Sys., Inc.*, 97 F.4th at 453.

"The greater the degree to which a message relies upon the viewer or consumer to integrate its components and draw the apparent conclusion. . . the less likely it is that a finding of literal falsity will be supported." *Innovation Ventures, LLC v. N.V.E., Inc.*, 694 F.3d 723, 735–36 (6th Cir. 2012) (quoting *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1181 (8th Cir.1998)).

"Whether a statement is too ambiguous to be literally false is a matter of law to be decided by the Court." *Louisiana-Pac. Corp. v. James Hardie Bldg. Prods. Inc.*, No. 3:18-CV-00447-JPM, 2018 WL 7272047, at *3 (M.D. Tenn. Dec. 20, 2018); *Am. Council of Certified Podiatric Physicians & Surgeons,* 185 F.3d at 615 n.2.

An ambiguous or true but misleading statement is as valid a basis for a false advertising claim as a literally false statement. The difference is that a plaintiff relying on an ambiguous or a true statement for a false adverting claim must present evidence, such as consumer data, to show what "the person to whom the advertisement is addressed find[s] to be the message." *Time Warner Cable, Inc.*, 497 F.3d at 158.

As to the first allegedly false statement – that Fresh Bourbon was the "first black-owned distillery in Kentucky" – Brough Brothers argues that this statement is literally false because Brough Brothers obtained the necessary federal and state permits to operate a distillery and distilled bourbon at a facility it leased before Fresh Bourbon did.

Fresh Bourbon asserts that it did not state it was the "first black-owned distillery in Kentucky." It asserts it stated only that it was "*considered by the Commonwealth of Kentucky* to be the first black owned distillery in Kentucky." (DE 70-1 Mem. 5). Fresh Bourbon asserts this was a reference to Kentucky Senate Resolution No. 176, which stated, "The Fresh Bourbon Distilling Company is considered to be the first black-owned bourbon distillery in Kentucky." (DE 70-3 Resolution.)

In its response to Fresh Bourbon's motion for summary judgment, Brough Brothers does not point to any evidence that Fresh Bourbon made the statement that it is the first black-owned distillery in Kentucky in any context other than in reference to the Kentucky resolution. Instead, Brough Brothers points to the other statements set forth above that Fresh Bourbon was the "first" to achieve various accomplishments other than being the first black-owned distillery in Kentucky. (DE 80 Response 7.)

In its motion for partial summary judgment, Brough Brothers indicates that the statement at issue was that Fresh Bourbon "holds the distinction as being the first African American-owned distilling company in Kentucky." (DE 73 Mem. 9.) In the online news article that Brough Brothers cites in support of this assertion, however, the article's author makes the statement, not any Fresh Bourbon representative. (DE 73-14, Forbes Article.) Brough Brothers does not point to any evidence that Fresh Bourbon used this article in marketing its product. Further, the author states that Fresh Bourbon "holds the distinction as being *one of the first* African American-owned

7

distilling companies in Kentucky." (DE 73-14 Forbes Article) (emphasis added.) Brough Brothers does not point to any evidence that this statement is literally false. The parties have presented evidence of only two African American-owned distilleries in Kentucky: Brough Brothers and Fresh Bourbon.

In its motion for partial summary judgment, Brough Brothers sets forth statements it alleges were made on WTVQ, on Fresh Bourbon's Facebook page, and on Ebony magazine's Facebook page indicating that Fresh Bourbon was the first black-owned distillery in Kentucky. (DE 73 Mem. 16.) Brough Brothers does not, however, submit these statements or any evidence that they were made or precisely what the statements were.

As to the statement that Fresh Bourbon is "*considered by the Commonwealth of Kentucky* to be the first black owned distillery in Kentucky," that statement is not literally false. Fresh Bourbon submits a resolution bearing the Commonwealth of Kentucky Senate seal stating, "The Fresh Bourbon Distilling Company is considered to be the first black-owned distillery in Kentucky." The resolution further states, "Be it resolved by the Senate of the General Assembly of the Commonwealth of Kentucky that. . . [t]he members of the Senate hereby honor Sean and Tia Edwards and The Fresh Bourbon Distilling Company and acknowledge the importance of this being the first black-owned distillery in Kentucky." (DE 70-3 Resolution.) Accordingly, it is not literally false to state that Fresh Bourbon is considered by the Commonwealth of Kentucky to be the first black-owned distillery in Kentucky. Brough Brothers asserts that the resolution was drafted by the Edwardses and means nothing because Brough Brothers was the first black-owned distillery in the state. Even so, Fresh Bourbon's statement that it was recognized as the first black-owned distillery in Kentucky would still be true if, perhaps, misleading.

Brough Brothers has presented no evidence that the statement that Fresh Bourbon was the first black-owned distillery in downtown Lexington is literally false. It has presented no evidence that another black-owned distillery was in Lexington before Fresh Bourbon. Brough Brothers has a distillery in Louisville but does not allege that it has distillery in Lexington. Nor has Brough Brothers presented any evidence that this statement is somehow ambiguous or true but misleading.

As to the statements that no African Americans, other than slaves, had "produced" bourbon before Fresh Bourbon and that Fresh Bourbon was the first bourbon "developed" grain to glass by African Americans in the state of Kentucky, Brough Brothers argues again that it had a distillery before Fresh Bourbon did. On the other hand, Fresh Bourbon has submitted evidence that its representatives "produced" or "developed" bourbon at the Hartfield facility before Brough Brothers began making it at its own distillery.

Brough Brothers argues that Fresh Bourbon's "minimal contributions" to producing bourbon at Hartfield cannot constitute producing or developing bourbon. (DE 80 Response at 9.) The words "produce" and "develop," however, are at least ambiguous as to the degree of involvement of the actor.

Moreover, Andrew Buchannan, the owner and master distiller of Hartfield, testified that Fresh Bourbon representatives were eventually engaged in all aspects of the bourbon-making process. (DE 70-6 Buchanan Dep. 89.) Buchanan testified that Michael Adams, Fresh Bourbon's master distiller, made the bourbon under his supervision at times but also without his supervision. (DE 70-6 Buchanan Dep. 91-92.) He testified that, over time, Hartfield was "a whole lot more hands off and [Fresh Bourbon representatives] were there doing a lot more of it" and had "free reign in the building." (DE 70-6 Buchanan Dep. 70.) He testified that Fresh Bourbon representatives did "everything" in the bourbon-making process without anyone from Hartfield

9

present. (DE 70-6 Buchanan Dep. 70.) They mashed and distilled the bourbon. (DE 70-6 Buchanan Dep. 70-71.)

It is true that Fresh Bourbon did not have the license and permit required to "distill" bourbon when its representatives produced or developed bourbon at Hartfield. But the statements at issue assert only that Fresh Bourbon produced or developed bourbon, not that it had a distiller's license. Brough Brothers argues that, in the context of the bourbon industry, the word "produce" is equivalent to "distilling" with a license. (DE 73 Mem. 22; DE 83 Reply 10-11.) Even if that is a reasonable interpretation of the words "produce" and "develop" in the context of the allegedly false statements, the Court cannot find it is the only reasonable interpretation of the words. Thus, the statements that Fresh Bourbon representatives were the first African Americans, other than slaves, to "produce" bourbon and that Fresh Bourbon was the first bourbon "developed" grain to glass by African Americans in Kentucky are, at most, ambiguous. They are not literally false.

Brough Brothers' own expert testified that it was "impossible to verify" whether Fresh Bourbon representatives were the first African Americans to make bourbon since slavery. (DE 80-1 Veach Dep. 20-21.) When asked whether he had any evidence that the statement is not true, the expert testified only that he was "willing to bet" that, after the Civil War, some former slaves continued to make bourbon for their former owners, but he pointed to no evidence on this point. He testified that in the 20th century, one distiller hired a lot of African Americans, and he "would not be surprised if they hired an African American distiller." (DE 80-1 Veach Dep. 21.) Again, however, he points to no evidence that this occurred.

Brough Brothers points to internet articles regarding two African Americans who worked for distilleries and, thus, were "involved in making and producing" bourbon before Fresh Bourbon existed. (DE 80 Response 11.) These articles appear to be hearsay, however, and the Court is not

10

aware of any applicable exception that would apply to them. Hearsay cannot be considered on a motion for summary judgment, and hearsay cannot be presented to a jury. *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994).

Moreover, as discussed, the words "produce" and "develop" in the two allegedly false statements are ambiguous as to the degree of involvement required. Producing or developing bourbon might mean being involved in all aspects of the process (like Buchanan testified that Fresh Bourbon was at Hartfield) or it might mean being involved in some part of the process (like the individuals in the news articles appear to have been). Both are reasonable interpretations. Thus, the Court cannot find, based on the evidence presented, that the statements that no African Americans, other than slaves, had "produced" bourbon before Fresh Bourbon and that Fresh Bourbon was "the first bourbon developed grain to glass by African Americans in the state of Kentucky" (DE 80 Response 7) are literally false.

Finally, the statement that Fresh Bourbon employed Kentucky's "first African American Master Distiller in Kentucky since slavery" (DE 80 Response at 15) is either ambiguous or an opinion, which cannot be the basis for a Lanham Act false advertising claim. *FedEx Ground Package Sys., Inc.*, 97 F.4th at 453. The term "Master Distiller" has no set definition. Brough Brothers' own expert Veach testified that the term has no "legal definition" and is "basically" a matter of opinion. (DE 70-5 Veach Dep. 11, 20.) Thus, this statement is not literally false.

Because none of the statements that Brough Brothers bases its Lanham Act claim on is literally false, it must produce evidence of actual deception to survive a motion for summary judgment. Brough Brothers produces no such evidence in its response to the motion for summary judgment or in its own motion for partial summary judgment. Instead, it argues that it need not

produce such evidence because each of the statements is literally false. For this reason alone, the Court must enter judgment in Fresh Bourbon's favor on the Lanham Act claim.

The Court will, however, continue the analysis of the Lanham Act claim by assuming without deciding that Fresh Bourbon made each of the five allegedly false statements set forth above and that each statement is literally false, meaning actual deception is presumed. Fresh Bourbon is still entitled to summary judgment on the Lanham Act claim because Brough Brothers has not presented any evidence of the third element – that any of the false statements "is material in that it will likely influence the deceived consumer's purchasing decisions." *Am. Council of Certified Podiatric Physicians & Surgeons*, 185 F.3d at 613.

Even for statements that are literally false, Brough Brothers must present evidence on materiality. "Once literal falsity is proved, there is no requirement of extrinsic evidence showing consumer deception. But [plaintiff] is not thereby relieved of the burden of showing materiality . . . *i.e.*, that the representation was likely to influence purchasing decisions." *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 68 (2d Cir. 2016) (quotations and citation omitted). "[E]ven when a statement is literally false or has been made with the intent to deceive, materiality must be demonstrated in order to show that the misrepresentation had some influence on consumers." *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 312 n.10 (1st Cir. 2002); *see also*, *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1250 (11th Cir. 2002) ("The plaintiff must establish materiality even when a the court finds that the defendant's advertisement is literally false."); *FedEx Ground Package Sys., Inc. v. Route Consultant, Inc.*, 661 F. Supp. 3d 765, 784 (M.D. Tenn. 2023) ("While it is true that . . . literally false statements can be presumed to be deceptive, *see Am. Council*, 185 F.3d at 614, that deception must still be of a material fact and must still actually harm the plaintiff."), *aff'd*, 97 F.4th 444 (6th Cir. 2024).

The Court has found only one circuit that may presume materiality for literally false statements. *See Pizza Hut, Inc. v. Papa John's Int'l, Inc*., 227 F.3d 489, 497 (5th Cir. 2000). The Court agrees, however, with the Eighth and Eleventh Circuit that the Fifth Circuit's discussion of materiality in *Pizza Hut* is "not clear and does not provide an explanation as to why a finding of literal falsity implies materiality." *Select Comfort Corp. v. Baxter*, 996 F.3d 925, 939–40 (8th Cir. 2021). The Eighth and Eleventh Circuits agreed that the Fifth Circuit had wrongly conflated the deception and materiality elements. *Id*.; *Johnson & Johnson Vision Care, Inc.*, 299 F.3d at 1250. The cases the Fifth Circuit cites in *Pizza Hut* do not hold that materiality should be presumed for literally false statements. It cites the Second, Sixth, Seventh and Ninth Circuits. As discussed, the Second Circuit has explicitly held to the contrary. *See Apotex Inc.*, 823 F.3d at 68. And the cited Sixth, Seventh, and Ninth Circuit cases presume only the second element – deception – for literally false statements, not materiality. *See Avila v. Rubin*, 84 F.3d 222, 227 (7th Cir. 1996) ("The general rule is that if a statement is literally false, the court may grant relief without reference to the reaction of buyers or consumers of the product. On the other hand, if a statement is not literally false, the court may find that it is impliedly misleading only if presented with evidence of actual consumer deception."); *Am. Council of Certified Podiatric Physicians & Surgeons*, 185 F.3d at 614 ("Where statements are literally false. . . [a]ctual deception is presumed."); *U-Haul Int'l, Inc. v. Jartran, Inc*., 793 F.2d 1034, 1041 (9th Cir. 1986) ("It is not easy to establish actual consumer deception through direct evidence. The expenditure by a competitor of substantial funds in an effort to deceive consumers and influence their purchasing decisions justifies the existence of a presumption that consumers are, in fact, being deceived. He who has attempted to deceive should not complain when required to bear the burden of rebutting a presumption that he succeeded.")

Presuming deception for a literally false statement makes sense. If a company makes a literally false statement, then it can be presumed that the consumer who receives the statement was deceived. But whether that statement had any bearing on the consumer's buying decision is a different issue. "The materiality requirement is based on the premise that not all deceptions affect consumer decisions." *Johnson & Johnson Vision Care, Inc.*, 299 F.3d at 1250. "[M]ateriality focuses on whether the false or misleading statement is likely to make a difference to purchasers." *Cashmere & Camel Hair Mfrs. Inst.*, 284 F.3d at 312 n.10.

While it can be presumed from the falsity of a statement that the person who reads or hears it will be deceived, it cannot be presumed from the falsity of a statement that the statement was important enough to influence that person's buying decisions. For example, if a company advertises that its shampoo was manufactured in New Jersey, but it was actually manufactured in Pennsylvania, then it can be presumed that consumers were deceived about where the product was manufactured. But whether the place the shampoo was manufactured means enough to influence consumers' buying decisions requires some evidence.

In response to Fresh Bourbon's motion for summary judgment, Brough Brothers presented no evidence from which the Court could find that the allegedly false statements are material. It submitted no evidence that the allegedly false statements influenced any consumer's buying decisions. In its own motion for partial summary judgment, on the issue of materiality, it argues that being the first black-owned distillery must be material because both parties used it in their marketing campaigns. (DE 73 Mem. 20-21.) A showing of materiality, however, "requires factual evidence concerning the relevant consumer market and the perspective of the potential customer in that market." *Louisiana-Pac. Corp.*, 2018 WL 7272047, at *7. "Although materiality is a legal determination, such a determination should be informed by factual evidence concerning the

relevant consumer market." *Fed. Exp. Corp. v. U.S. Postal Serv.*, 40 F. Supp. 2d 943, 953 (W.D. Tenn. 1999). Brough Brothers has submitted no factual evidence that any allegedly false statement made by Fresh Bourbon was material to any consumer's buying decision.

For all these reasons, the Court will enter summary judgment in favor of Fresh Bourbon on the Lanham Act claim.

### B. State Law Claims

Brough Brothers also asserts state law claims against Fresh Bourbon for unfair competition, using a false brand in violation of KRS § 365.100, and tortious interference with contractual or business relationships or expectancies. The Court will enter judgment in Fresh Bourbon's favor on each of these claims.

#### 1) Unfair Competition

The "fundamental element" of an unfair competition claim "is the element of deception; either one must directly represent his goods as that of another, or he must deceive the purchasing public of that article by placing it upon the market in such form and dressed with such symbols or insignia as to deceive them into believing it is the product of another." *Ballard & Ballard Co. v. Borden Co.*, 107 F. Supp. 41, 50 (W.D. Ky. 1952) (quoting *Mayfield Milling Company v. Covington Bros. & Company*, 278 S.W. 562, 564 (Ky. 1925). "The rule is well-settled that nothing less than conduct tending to pass off one man's merchandise or business as that of another will constitute unfair competition." *Id.* (quoting *Socony-Vacuum Oil Company v. Rosen,* 108 F.2d 632, 635 (6th Cir. 1940)). "[T]he essence of unfair competition consists in palming off, either directly or indirectly, one person's goods as those of another. . . ." *Id.* (quoting *Socony-Vacuum*, 108 F.2d at 635).

15

"The essence of the wrong is the sale of one's own goods for those of another person . . . " *Covington Inn Corp. v. White Horse Tavern, Inc.*, 445 S.W.2d 135, 137-38 (Ky. 1969) (internal quotation omitted). "Courts are overwhelmingly hesitant to apply unfair competition in situations beyond" that. *Allstate Ins. Co. v. Hamm*, No. 217CV00049WOBCJS, 2020 WL 1431953, at *16 (E.D. Ky. Mar. 23, 2020).

Brough Brothers does not present any evidence or even allege that Fresh Bourbon represented that its bourbon was Brough Brothers' bourbon or the product of any other entity or that Fresh Bourbon tried to pass off its bourbon as that of another entity. Nor does it present any evidence or even allege that any consumer was deceived into thinking that Fresh Bourbon's product was anyone else's. The Court will enter judgment in favor of Fresh Bourbon on this claim.

### 2) Unfair and Deceptive Trade Practices under KRS § 365.100

Brough Brothers asserts a claim under KRS § 365.100, which provides, "No person shall use a false brand on anything sold, or to be sold or offered for sale, with intent to deceive the purchaser." Ky. Rev. Stat. Ann. § 365.100. This claim fails for a couple of reasons. First, as discussed above, Brough Brothers does not claim that Fresh Bourbon used a false brand to deceive purchasers. Second, Brough Brothers does not assert any damages.

Brough Brothers argues that it does not have to prove damages for this claim because the statute does not mention damages; the statue mentions only the intent to deceive. The statute, however, does not explicitly provide for a private cause of action at all. Thus, Brough Brothers must rely on KRS § 446.070 for recovery. *Christian Cnty. Clerk ex rel. Kem v. Mortg. Elec. Registration Sys., Inc.*, 515 F. App'x 451, 459 (6th Cir. 2013) ("Section 446.070 is the Kentucky legislature's exclusive remedy for a statutory violation where the underlying statute does not provide a remedy.")

Section 446.070 provides a private right of action only for individuals damaged by a violation of KRS § 365.100. ("A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation . . .") "Recovery under [KRS § 446.070] may not be had merely because another has violated the act, but rather the one seeking recovery must have sustained some special injury and the injury must be the proximate result of the statute's violation. In short, the statute does not give a right of action against every person violating a statute, but only to persons suffering an injury as a direct and proximate result thereof; and then only for such damages as they may actually sustain." *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 800 (Ky. 2004), *overruled on other grounds by Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276 (Ky. 2014); *see also Barrios v. Elmore*, 430 F. Supp. 3d 250, 259 (W.D. Ky. 2020).

### 3) Tortious Interference

Brough Brothers asserts that Fresh Bourbon tortiously interfered with contracts and with business relationships and expectancies. The Court will enter judgment in favor of Fresh Bourbon on these claims because Brough Brothers has failed to present any evidence on any element of either claim. As to tortious interference with contracts, Brough Brothers does not allege or present any evidence of any contract between it and a third party. Nor does it allege or present evidence of Fresh Bourbon's knowledge of any such contract; that Fresh Bourbon intended to cause a breach of that contract; that Fresh Bourbon's actions did indeed cause a breach of that contract; or any damages. *Snow Pallet, Inc. v. Monticello Banking Co*., 367 S.W.3d 1, 5–6 (Ky. Ct. App. 2012) (setting forth elements of the claim).

As to the claim for tortious interference with a business relationship or expectancy, Brough Brothers does not allege or present any evidence of the existence of such a business relationship

17

or expectancy. Nor does it present evidence that Fresh Bourbon was aware of this relationship or expectancy, that Fresh Bourbon intentionally interfered with it or any damages. *Id.* at 6.

For these reasons, the Court will grant summary judgment to Fresh Bourbon on the tortious interference claims.

### III. Conclusion

For all these reasons, the Court hereby ORDERS as follows:

1) Fresh Bourbon's motion for summary judgment (DE 70) is GRANTED;

2) Brough Brothers' motion for partial summary judgment (DE 73) is DENIED;

3) All other pending motions are DENIED as moot; and

4) Judgment will be entered consistent with this opinion.

This 31st day of January, 2025.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY